# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**KENNETH MARTIN BOGGS,**

      **Plaintiff,**

**v.**                                  **Case No. 3:12cv370/RV/CJK**

**MARIA IRENE LUCAS, et al.,**

      **Defendants.**

_____/

## SECOND REPORT AND RECOMMENDATION

This cause is before the Court upon plaintiff's filing a second amended civil rights complaint under 42 U.S.C. § 1983. (Doc. 19). The filing fee has been paid. (Doc. 10). Upon review of the second amended complaint, the Court concludes that the affirmative defense of failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) still bars recovery on plaintiff's claims, and that this case should be dismissed.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Blackwater River Correctional Facility. Plaintiff was confined at Okaloosa Correctional Institution at the time of the events giving rise to his complaint. Plaintiff initiated this action on July 26, 2012, by filing a civil rights complaint against Maria

Irene Lucas, an Inspector with the Florida Department of Corrections ("DOC"), and Michael Crews, Secretary of the DOC, claiming that they violated his constitutional rights when they confiscated and refused to return his state habeas corpus petition and associated documents. (Doc. 1). On January 24, 2013, the undersigned conducted a preliminary screening of the complaint under 28 U.S.C. § 1915A, noted several deficiencies in the complaint, including plaintiff's apparent failure to properly exhaust his administrative remedies, and issued an order requiring plaintiff to file an amended complaint. (Doc. 12). The undersigned warned plaintiff that if he had not properly exhausted his administrative remedies, his complaint would be dismissed and he would receive another "strike". (Doc. 12, p. 5 (*citing* 28 U.S.C. § 1915A; 28 U.S.C. § 1915(g)).[1] Plaintiff was advised that he could avoid a strike by filing a notice of voluntary dismissal. Plaintiff requested that the Court return his filing fee (doc. 13) and, when the Court did not (doc. 14), plaintiff chose to proceed with this case by filing an amended complaint. (Doc. 15). On May 8, 2013, the undersigned issued a report and recommendation concluding that the case should be dismissed, because it was apparent from the face of plaintiff's amended complaint and attachments that the affirmative defense of failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) barred recovery on plaintiff's claims. On May 29, 2013, the District Judge entered an order providing, in relevant part, as follows:

> 1. The magistrate judge's report and recommendation is adopted and incorporated by reference in this order.

---

[1] Plaintiff previously received a strike when he brought suit against defendant Lucas based on the same claims he raises here. *See Boggs v. Lucas*, Case No. 3:11cv222/LC/CJK. Plaintiff's suit was dismissed on April 23, 2012, for plaintiff's failure to comply with § 1997e(a)'s exhaustion requirement. (*See* Case No. 3:11cv222, Docs. 15, 19).

2. The plaintiff appears to have a dual grievance against Inspector Lucas: that she confiscated his state habeas corpus petition and associated documents instead of mailing them and that she has refused to return them. These actions may be ongoing, as plaintiff contends, but his only request seems to be his grievance of September 6, 2010, to which Lucas responded on September 17, 2012 [sic], and which plaintiff did not further appeal. I will give plaintiff an opportunity to make a proper request and, if applicable, to exhaust his administrative remedies.

3. This case is DISMISSED, WITHOUT PREJUDICE, under 28 U.S.C. § 1915A(b)(1) for plaintiff's failure to state a claim upon which relief may be granted. Plaintiff is granted leave to file an amended complaint (with this case number and specifically referencing this authority) within six months from the date of this order, if he has then exhausted his administrative remedies. If he does not do so within six months, then this dismissal shall be with prejudice and this case closed.

(Doc. 18).

Plaintiff filed the now-pending second amended complaint on August 2, 2013. (Doc. 19). Plaintiff's second amended complaint again names as defendants Inspector Lucas and Secretary Crews. (Doc. 19, pp. 1-2). Plaintiff sues the defendants in their individual and official capacities. (*Id*., p. 2). Plaintiff asserts the same facts and claims as his amended complaint, namely, that defendant Lucas violated his First Amendment rights on August 18, 2010, when she confiscated a habeas corpus petition and associated documents plaintiff had submitted for mailing to state court, on the grounds that she "did not approve of the content(s) of the briefs". (Doc. 19, Section IV "Facts", pp. 3-5). Lucas indicated to plaintiff that she was impounding the documents and forwarding them to the DOC for review. (*Id*., p. 5 ¶ 18). To date, plaintiff's documents have not been returned. (*Id*., p. 6 ¶ 22). Plaintiff claims defendants Lucas and Crews violated his "rights to access of the

courts, to uncensored legal documents, to petition the government for redress of grievances, and due process" in violation of the First, Fifth and Fourteenth Amendments. (Doc. 19, Section V "Legal Claims", p. 10 ¶ 29). As relief, plaintiff seeks a declaration that his rights were violated, the return of his documents, nominal damages and any additional relief the Court deems just, proper and equitable. (*Id.*, Section VI "Prayer for Relief").

## DISCUSSION

Because plaintiff is a prisoner, the Court is required to dismiss his complaint if the Court determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the Court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. at 1968-69 (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). The complaint is also subject to dismissal for failure to state a claim if the

allegations – on their face – show that an affirmative defense bars recovery on plaintiff's claims. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920-21, 166 L. Ed. 2d 798 (2007) (reiterating that principle and providing, as an example, that if a complaint's allegations show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim).

Title 42 U.S.C. § 1997e provides, in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524, 122 S. Ct. 983. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth*, 532 U.S. at 734, 121 S. Ct. at 1825.

"[T]he PLRA exhaustion requirement requires <u>proper</u> exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387, 165 L. Ed. 2d 368 (2006) (emphasis

added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." 548 U.S. at 90-91, 93, 126 S. Ct. at 2386-87. The Court reasoned that because proper exhaustion of administrative remedies is necessary, an inmate cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him. 548 U.S. at 83-84, 126 S. Ct. at 2382; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA).

The exhaustion requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *Id.* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Nor is a court allowed to continue a case pending exhaustion. *Alexander*, 159 F. 3d at 1324-26 (holding that there is no discretion to waive the exhaustion requirement or provide continuances in the event a claim was not exhausted prior to filing suit).

The grievance procedures promulgated by the DOC require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11ᵗʰ Cir. 2010). If an inmate is filing an emergency grievance, he may bypass use of informal and formal grievances and begin his complaint with a direct grievance to the Central Office. *Id.* at r. 33-103.007(6)(a). If an inmate files a direct grievance with the Central Office, he must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and for bypassing the formal grievance step. *Id.* Upon receipt of the direct grievance by the Central Office and following review of the grievance, if it is determined that the grievance is not an emergency grievance, the grievance must be returned to the inmate with the reasons for return specified and an advisement that the inmate resubmit his grievance at the appropriate level. *Id.*

The DOC's grievance procedures also establish time frames for inmates to file grievances. Rule 33-103.011 provides:

> When determining the time frames for grievances in all cases, the specified time frame shall commence on the day following the date of the incident or response to the grievance at the previous level. For example, if an incident occurred on December 1, fifteen days from that date would be December 16.
>
> (1) Filing of Grievance.
>
> (a) Informal Grievances – Must be received within 20 days of when the incident or action being grieved occurred. . . .
>
> (b) Formal Grievances – Must be received no later than 15

calendar days from:

>        1.  The date on which the informal grievance was responded to; or

>        2.  The date on which the incident or action being grieved occurred if an informal grievance was not filed pursuant to the circumstances specified in subsection 33-103-006-3, F.A.C.

>    . . . .

>        (d)  Direct Grievances to the Office of the Secretary – Must be received within 15 calendar days from the date on which the incident or action which is the subject of the grievance occurred.

FLA. ADMIN. CODE r. 33-103.011(1)(a)-(b).

The grievance procedure provides for an extension of the time frames as follows:

>        (2) An extension of the above-stated time periods shall be granted when it is clearly demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner.  The granting of such an extension shall apply to the filing of an original grievance or when re-filing a grievance after correcting one or more deficiencies cited in Rule 33-103.014, F.A.C.

FLA. ADMIN. CODE r. 33-103.011(2).  The deficiencies cited in Rule 33-103.014 include:

>        (f) The inmate did not provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable. This evaluation is made on a case by case basis and the reasons for rejecting the complaint will vary with the facts alleged in the complaint.

. . . .

(m)  A decision has already been rendered to an inmate by a particular office on the issue currently being grieved before it.

(u)  The inmate filed an informal grievance in excess to 20 days from the time the event being grieved occurred.

FLA. ADMIN. CODE r. 33-103.014(1).  An inmate who has a grievance returned to him for reason stated in subsections (f) may refile utilizing the proper procedure, or correct the stated deficiency and re-file if, upon receipt of the notification, the filing is within allowable time frames.  *Id.* r. 33-103.014(2).  When a grievance is returned to an inmate for the reason stated in subsection (m) or (u), the grievance may not be refiled.  *Id.*

Plaintiff's second amended complaint contains a Section IV, titled "Exhaustion of Remedies and Prior History".  (Doc. 19, pp. 6-9).  Plaintiff alleges that on August 23, 2010, he filed a direct grievance to the Central Office concerning Lucas' confiscation and impoundment of his legal materials.  (*Id*. ¶ 23(a)).  The grievance was assigned log number 10-6-27372.  (Doc. 19, Ex. B).  On September 1, 2010, the Central Office returned the grievance to plaintiff without action, explaining:

NOTE:  This grievance is not accepted as a grievance of an emergency nature.

Your request for administrative appeal is in non-compliance with the Rules of the Department of Corrections, Chapter 33-103, Inmate Grievance Procedure.  The rule requires that you first submit your appeal at the appropriate level at the institution.  You have not done so or you have not provided this office with a copy of that appeal, nor have you provided a valid or acceptable reason for not following the rules.

The institution should be given the opportunity to respond to your issue.

Upon receipt of this response, you are allowed an additional 15 days from the date this response was mailed (date stamped in upper left corner) to resubmit your grievance at your current location in compliance with Chapter 33-103, Inmate Grievance Procedure. Attach a copy of this response to your re-filed grievance.

Based on the foregoing information, your grievance is returned without action.

(*Id.*). On September 6, 2010, plaintiff submitted an informal grievance to defendant Lucas concerning her confiscation of his legal documents. (Doc. 19, p. 7 ¶ 23(b) and Ex. C). Inspector Lucas responded on September 17, 2010, as follows:

Your facts are false and inaccurate. The documents typed in the law library indicated your name as copywrited [sic]. This is in violation of the rules and regulations 33-601.314 and violates this regulation by 9-21 Fraud or Attempted Fraud. This is per DOC Legal Counsel. Eligible for a DR to be written. You stand corrected - no DR was written by anyone at my direction. I will write it.

(*Id.*). Defendant Lucas signed and dated her response. (*Id.*). The grievance form provided plaintiff with information about how to appeal. (*Id.* ("If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.0006, F.A.C.")). Plaintiff did not file a formal grievance or otherwise appeal.

On May 6, 2011, plaintiff filed an informal grievance complaining of Lucas' August 18, 2010 confiscation of his legal documents. (Doc. 19, Ex. D). The grievance was returned to plaintiff without processing on May 9, 2011, on the grounds that a decision had already been rendered at that level, and the grievance was filed beyond the time frames required by FLA. ADMIN. CODE r. 33-103.014(1). (*Id.*). After dismissal of plaintiff's Case No. 3:11cv222/LC/CJK, plaintiff filed another

informal grievance on May 16, 2012, complaining about Lucas' August 18, 2010 confiscation of his legal documents and noting that "[a]s of the filing of this grievance, Inspector Lucas still retains my . . . legal mail. . . ." (Doc. 19, p. 7 ¶ 23(d) and Ex. E).  The informal grievance was returned to plaintiff without processing on May 17, 2012, with the following explanation:  "Your Informal Grievance was submitted well outside of the required time frame specified in Chapter 33.103.[0]11(1)(a) 1 year and 4 months is not considered a 'reasonable  amount of time.'  Your grievance is being returned without action." (Doc. 19, Ex. E).  On May 23, 2012, plaintiff filed a formal grievance with the institution.  (Doc. 19, pp. 7-8 ¶ 23(d) and Ex. E).  The formal grievance was returned to plaintiff without processing on June 4, 2012, with the explanation:  "Response to your informal grievance log number 12-5-133 is correct.  You have filed a grievance concerning an incident that occurred on August 18, 2010 (a year and 10 months ago) well beyond the required time frames provided in Chapter 33.  Based on the above information your grievance is returned without processing."  (Ex. E).  Plaintiff appealed to the Central Office. (Doc. 19, p. 8, ¶ 23(d) and Ex. E).  The appeal was returned to plaintiff without processing on July 2, 2012, with the following explanation:  "Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule.  Your request for administrative appeal is being returned without action."  (Ex. E).

Plaintiff's second amended complaint attaches additional grievances plaintiff filed <u>after</u> the District Judge's order authorizing him to file a second amended complaint.  (Doc. 19, Ex. I).  On June 10, 2013, plaintiff filed an informal grievance

complaining of Lucas' confiscation of his legal documents on August 18, 2010, and requesting return of the documents. (Doc. 19, Ex. I, pp. 3-4). The grievance was assigned log number 13-06-080. The following response was provided: "1. You are grieving a matter well beyond the allowable time frames. 2. The documents in question were correctly confiscated. 3. You can contact the Inspector General's Office in Tallahassee if you have any further questions regarding this issue." (*Id.*, Ex. I, p. 3). On June 17, 2013, plaintiff filed a formal grievance with the Warden, arguing that the response to his informal grievance was "incorrect and inadequate". Plaintiff argued that his grievance was not beyond the allowable time frames because "the issue is on-going." (Ex. I, p. 1). Plaintiff further argued that his documents were not properly confiscated because although the state habeas petition was confiscated because it allegedly presented plaintiff's name as being copyrighted, the attachments to the petition did not contain the offending copyright and thus were not properly confiscated and should be returned. (*Id.*). The formal grievance was assigned log number 1306-185-058, and was returned to plaintiff without processing on June 24, 2013, with the following explanation:

> Your grievance was received, reviewed and evaluated with the following response:
>
> Review of grievance log number 13-06-080 finds that it was returned to you because it was submitted in non-compliance with Chapter 33-103-014. Your grievance regards an issue that occurred on August 10, 2010. The fact that you disagree with the decision, does not mean that the decision is wrong.
>
> Based on the above information your grievance is returned without processing.

(Doc. 19, Ex. I, p. 5). Plaintiff appealed to the Central Office. (Ex. I, p. 2). The

appeal was returned to plaintiff without processing on July 8, 2013, with the explanation: "Your administrative appeal to this office is in non-compliance with Chapter 33-103, Inmate Grievance Procedure, because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule. Your request for administrative appeal is being returned without action." (Ex. I, p. 6).

Plaintiff admits that all of the grievances he filed in 2011, 2012 and 2013 were returned for failure to comply with the DOC's procedural rules. (Doc. 19, p. 8 ¶ 23(f)). Plaintiff argues that his claims should nonetheless be allowed to proceed because the DOC was wrong in returning his grievances. Plaintiff argues that his grievances were not untimely, because "[t]he date the violations commenced is not relevant since the violations are ongoing." (Doc. 19, p. 8 ¶ 23(f) and (h)). Plaintiff further argues that the return of his first grievance filed directly with the Central Office was improper, because "the issue was sensitive and an emergency due to pending court deadlines." (*Id*.). Plaintiff's arguments should be rejected.

The Supreme Court, in holding that the PLRA requires proper exhaustion, stated: "[C]ourts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford*, 548 U.S. at 90 (emphasis omitted). The continuing nature of plaintiff's injury does not re-start, toll, or render inapplicable the DOC's administrative filing deadlines. *See Wallace v. Burbury*, 305 F. Supp. 2d 801, 806 (N.D. Ohio 2003) (rejecting prisoner's argument that prison grievance procedure's filing deadline should be tolled for every day the alleged constitutional violation continued, stating: "To allow a filing deadline to toll with a

continuous violation . . . would undermine the very purpose of the deadline, which is to limit the time to file a claim.).  Nor does the continuing nature of plaintiff's injury excuse plaintiff from complying with the prison grievance procedure's filing deadlines and requirements.  The prison grievance procedure was available to plaintiff at the time Lucas confiscated, impounded, and refused to return plaintiff's legal documents in 2010.  Plaintiff improperly attempted to bypass the proper procedure by proceeding directly to the Central Office.  After the Central Office rejected plaintiff's attempt, plaintiff was given another opportunity (and additional time) to comply with the agency's procedural rules.  Despite this second chance, plaintiff chose again to attempt to bypass the proper procedure by filing suit in this Court after Inspector Lucas denied his informal grievance on September 17, 2010, instead of timely appealing to the next administrative level.  When plaintiff later attempted to correct this deficiency, it was too late and his grievances were returned as untimely.  Plaintiff's grievances filed in 2011, 2012 and 2013 were properly rejected without action.

Plaintiff's second contention – that the Central Office erred in returning his direct grievance dated August 23, 2010, on the grounds that it was not of an emergency nature  – should also be rejected.  In plaintiff's direct grievance to the Central Office, plaintiff explained that his grievance was an emergency because: "The petition Inspector Lucas confiscated was an emergency petition for writ of habeas corpus which would have authorized my release from prison within 72-hours of it being filed with the court."  (Doc. 19, Ex. B).  The DOC did not err in finding that plaintiff's grievance did not involve an emergency, did not qualify for consideration as a direct grievance to the Central Office, and did not justify plaintiff's

bypass of the informal and formal grievance steps.

CONCLUSION

It is apparent from the face of plaintiff's second amended complaint and attachments that the affirmative defense of failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) bars recovery on plaintiff's claims. To allow plaintiff to seek judicial relief despite his willful failure to comply with the DOC's prison grievance procedure would be contrary to Congress' intent in establishing § 1997e(a)'s exhaustion requirement. As the Supreme Court in *Woodford v. Ngo*, explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

548 U.S. at 95, 126 S. Ct. at 2388. This case should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1. That this case be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915A(b)(1) for plaintiff's failure to state a claim upon which relief may be granted.

2. That the Clerk be directed to close the file.

At Pensacola, Florida this 9th day of October, 2013.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).